(44 App. Div. 592.)

### BLANK v. KEARNY et al.

(Supreme Court, Appellate Division, Second Department. November 28, 1899.)

**1. MUNICIPALITIES—CONTRACTS—LIGHTING STREETS.**
Greater New York Charter, § 416, makes it the duty of the board of public improvements, of which the commissioner of public buildings, lighting, and supplies is a member, to prepare and recommend to the municipal assembly all ordinances regulating the lighting of streets and other public places, and all ordinances regulating the making of contracts

for public work or supplies by which the city shall be liable to pay money. Section 417 provides that all proposed ordinances regulating the public work specified in section 416 must be adopted by the board of public improvements, and submitted to the municipal assembly, so as to afford an entire rule of municipal action on each of the different subjects in said section specified. Section 419 provides that all contracts for work or supplies, except as otherwise provided in the charter, shall be made by the appropriate heads of departments under such regulations as shall be established by ordinance of the municipal assembly. *Held* that, the legislative power of the municipal assembly being of a general nature, it is not required that the commissioner of public buildings, lighting, and supplies should receive express authorization from the municipal assembly before entering into a contract for the lighting of streets or other public places of the city.

2. PUBLIC LIGHTING—AUTHORITY TO MAKE CONTRACT. ·

Greater New York Charter, § 413, providing that, except as therein otherwise provided, any public work or improvement within the control of any one of the departments of the commissioners who constitute the board of public improvements, that may be the subject of a contract, must first be authorized by the board of public improvements and by the municipal assembly, does not apply to public lighting of the city, and hence does not restrict the action of the commissioner of public buildings, lighting, and supplies in making contracts before receiving express authorization from the municipal assembly.

Appeal from special term, Kings county.

Action by Joseph Blank against Henry S. Kearny, as commissioner of public buildings, lighting, and supplies of the city of New York, and the city of New York, for an injunction. From an order of the supreme court (59 N. Y. Supp. 645) continuing a preliminary injunction, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William J. Carr, for appellants.

James C. Church, for respondent.

WILLARD BARTLETT, J. This is a taxpayer's action, the purpose of which is to prevent the commissioner of public buildings, lighting, and supplies of the city of New York from making contracts for the lighting of the streets, parks, highways, piers, or public places in any of the boroughs of the said city until such contracts shall have been expressly authorized by the municipal assembly. A preliminary injunction was granted restraining the commissioner from awarding, making, or signing any such contracts. This injunction has been continued pendente lite by an order of the court at special term, and from that order the commissioner and the city of New York have appealed.

The appeal involves the construction of the several sections of the Greater New York charter relating to the respective powers of the municipal assembly and the commissioner of public buildings, lighting, and supplies in regard to the lighting of the streets, public places, and public buildings of the city. Section 49 declares that, subject to the provisions of the act, the municipal assembly shall have power to make, establish, publish, and modify, amend, or repeal ordinances, rules, regulations, and by-laws not inconsistent with the charter, or with the constitution or laws of the United States or of this state, to provide for lighting streets, roads, places, and avenues. Subdivision

8, last clause. Section 416 makes it the duty of the board of public improvements to prepare and recommend to the municipal assembly all ordinances and resolutions regulating "the lighting of all public thoroughfares, places, bridges, and buildings." Subdivision 10. This board consists of the president thereof, the mayor, the corporation counsel, the comptroller, the commissioner of water supply, the commissioner of highways, the commissioner of street cleaning, the commissioner of sewers, the commissioner of public buildings, lighting, and supplies, the commissioner of bridges, and the presidents of the several boroughs. Section 410. It is also charged with the duty of recommending to the municipal assembly all ordinances and resolutions regulating "the making of all contracts for public work or supplies and agreements in relation thereto by which the city shall be liable to pay money." Section 416, subd. 13. In section 417 it is provided that all proposed ordinances regulating the public work specified in the previous section (which, among other things, specifies "the lighting of all public thoroughfares, places, bridges, and buildings," as already stated) must from time to time be adopted by the board of public improvements, and, after approval and certification, be submitted to the municipal assembly, which shall have no power of amendment, but must either enact or reject the same. All contracts to be made or let for work to be done or supplies to be furnished, except as in the charter otherwise provided, are required to be made by the appropriate heads of departments, under such regulations as shall be established by ordinance or resolution of the municipal assembly. Section 419. Section 573 of the charter, which relates to the jurisdiction of the commissioner of public buildings, lighting, and supplies, gives that officer cognizance and control of "the making and performance of contracts when duly authorized in accordance with the provisions of this act, and for the execution of the same in the matter of furnishing the city or any part thereof, with gas, electricity or any other illuminant"; and pursuant to section 587 the commissioner, "under and in conformity to the ordinance regulating contracts, shall prepare the terms and specifications under which contracts shall be made for lighting the streets, public buildings, and parks" of the city. Separate lighting contracts are required to be made in each borough, "or in such subdivisions of the city as may appear to the board of public improvements and the municipal assembly to be for the best interests of the city." The contracts must be for the term of one year, and be awarded to the lowest bidder. These seem to be the principal statutory provisions bearing upon the plaintiff's cause of action, unless it is affected by the following clauses of section 413 of the charter:

"Except as herein otherwise provided, any public work or improvement within the cognizance or control of any one or more of the departments of the commissioners who constitute the board of public improvements, that may be the subject of a contract, must first be duly authorized and approved by a resolution of the board of public improvements and an ordinance or resolution of the municipal assembly. * * * When a public work or improvement shall have been duly authorized as aforesaid, then, but not until then, it shall be lawful for the proper department to proceed in the execution thereof in accordance with the provisions and subject to the limitations of this act."

61 N.Y.S.—6

If the phrase, "any public work or improvement," in this section, was intended to comprehend service rendered and supplies furnished in carrying on the ordinary functions of the municipality whenever carried on through the agency of a contract, then the learned judge at special term was right in continuing the injunction. In our judgment, however, section 413 of the Greater New York charter relates rather to public works in the nature of betterments, and does not refer at all to such a matter as public lighting, which must constantly be provided for from day to day and month to month in the administration of the affairs of the city. The section is headed "Authorizing Public Improvements," a title which aptly characterizes its provisions as thus construed, but which would be inaccurate if we adopted the construction put upon the clauses quoted in the court below. Of course, there is a sense in which any service performed for a city, even the humblest, may be deemed a public work; but it seems quite clear to us that only enterprises in the nature of public improvements fall within the purview of this section of the charter.

Being satisfied that section 413 does not operate to restrict the action of the commissioner of public buildings, lighting, and supplies in respect to the annual contracts for lighting the city, which the charter requires him to make, let us inquire whether the general scheme of the charter contemplates an express authorization from the municipal assembly to enter into each particular contract in advance of the execution of such contract by the commissioner, and as a prerequisite to a valid execution thereof, or whether it was not rather the design of its framers that the municipal assembly should ordinarily exercise legislative powers over the subject of lighting through the agency of ordinances of a general nature, while the administrative functions of the municipality in respect to lighting, involving a multitude of details, were to be in the hands of the commissioner. It seems to us that the latter alternative is the correct view. The duty imposed upon the municipal assembly by section 417 of the charter was to enact general ordinances, previously formulated by the board of public improvements, relating to the making of contracts by the several departments of the city government. We do not mean to assert that the municipal assembly might not go further, and legislate as to a particular contract, if disposed so to do; but we do say that at the time of consolidation the new city was to be what may be termed a "going concern," and that, in the absence of restrictive legislation by the municipal assembly, the powers of administration vested by the charter in the commissioner of public buildings, lighting, and supplies, and other heads of departments, might be exercised by them without any additional grant of authority other than that found in the statute. This construction was rendered necessary, for otherwise the failure of the municipal assembly to act in advance upon each contract required to carry on the current business of the departments would operate practically as a suspension of the administration of municipal affairs. Indeed, it is not shown in these appeal papers that the municipal assembly has ever even adopted any general ordinance in relation to

street lighting; and in the brief of the corporation counsel it is.positively asserted that no ordinance on the subject has yet been enacted. But, if the omission of the municipal assembly to legislate in regard to the matter were held to deprive the commissioner of public buildings, lighting, and supplies of all power to contract for the lighting of the city, the business of his department, so far as lighting is concerned, would long since have been brought to a standstill. Section 419 of the charter undoubtedly requires that all contracts for work to be done or supplies to be furnished, except as otherwise provided in the charter, shall be made by the appropriate heads of departments "under such regulations as shall be established by ordinance or resolution of the municipal assembly." We agree with the corporation counsel that this requirement presupposes the existence of general ordinances to be obeyed; but, if no such regulating ordinances have been promulgated by the municipal assembly, we think that the charter authorizes and permits the appropriate heads of departments to go on nevertheless, and make such contracts as pertain to the ordinary administration of the city government. The conclusion that the charter contemplates general, rather than specific, legislative action on the part of the municipal assembly for the regulation of contracts, finds strong support in the last clause of section 417, where we find this direction:

"So far as may be possible in the first instance, and so far as the public business may permit, the ordinances regulating the matters provided for in section 416 of this act shall be submitted to the municipal assembly so as to afford an entire rule of municipal action upon each of the different subjects in said section described and specified."

This appeal presents only the question of law which has been discussed in regard to the power of the commissioner of public buildings, lighting, and supplies. There is no allegation or suggestion of any intentional wrongdoing on his part. Having determined the question of law in favor of the defendants, it follows that the order continuing the preliminary injunction must be reversed, and the injunction dissolved.

Order reversed, with $10 costs and disbursements of the appeal, and injunction dissolved, with $10 costs. All concur.